IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, v. Kevin S. Murdock, Thomas C. Lee, and Vidhya V. Narayanan, Defendant(s). | ) | Case No. 6:26-cr-00202-JDA **OPINION AND ORDER** |

This matter is before the Court on Defendant Murdock's Motion for leave to issue Rule 17(c) subpoenas duces tecum with pretrial return dates. [Doc. 87.] The Assistant United States Attorney does not object to Murdock's right to serve the subpoenas but reserves the right to join any objections filed by the recipients. However, the party who issues a Rule 17(c) subpoena bears the burden of showing that the requested documents are relevant, admissible, and described with adequate specificity. *United States v. Nixon*, 418 U.S. 683, 699—700 (1974). For the reasons stated below, the motion is denied.

## Legal Standard

Rule 17(c)(1) provides in pertinent part that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." Fed. R. Cr. P. 17(c)(1). Rule 17(c) "implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir.1988). Rule 17(c) lets a defendant subpoena information, but

provides that "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed.R.Crim.P. 17(c) (2). The Supreme Court has held that a Rule 17(c) subpoena is "unreasonable or oppressive" unless the party requesting it demonstrates:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699—700. Accordingly, a defendant seeking a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id*. at 700.

Rule 17(c), however, "is not intended to provide a means of pretrial discovery; rather, its primary purpose is simply 'to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.'" *United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010) (*quoting United States v. Nixon*, 418 U.S. 683, 698-99 (1974)). The proponent of a Rule 17 subpoena may not use a subpoena to "fish[ ] for evidence that might support his theory, as if he were in the discovery phase of a civil action." *Richardson*, 607 F.3d at 368. In applying the *Nixon* test, "[t]he Fourth Circuit has repeatedly stressed that Rule 17(c) is not a general discovery device, and to that end, the party requesting the information must identify with specificity what is sought." *United States v. Ging-Hwang Tsoa*, No. 1:13cr137, 2013 WL 5837631, at *2 (E.D. Va. Oct. 29, 2013) (internal citations omitted). That is, "a Rule 17 subpoena duces tecum cannot substitute for the limited discovery otherwise permitted in criminal cases and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena." *United*

*States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010). The specificity prong of the *Nixon* test thus requires "more than the title of a document and conjecture as to its contents," *United States v. Underwood*, No. 0:19-CR-00420-JMC-1, 2019 WL 5078351, at *3 (D.S.C. Oct. 10, 2019), and "[Rule] 17(c) subpoena requests for 'any and all' documents are too broad to meet the test outlined in *Nixon*." *United States v. Wai Lun Ng*, No. 5:07CR24-V, 2007 WL 3046215, at *3 (W.D.N.C. Oct. 16, 2007).

## **Background**

The indictment charges that Premier Medical, Inc. d/b/a Premier Medical Laboratory Services ("Premier") was owned and operated by Defendants Murdock, Thomas Lee and Vidhya Narayanan ("the Defendants"). [Doc. 1 ¶ 1.] Premier offered diagnostic testing services for medical providers, including but not limited to COVID-19 testing, in the district of South Carolina and elsewhere. [*Id.*] The Defendants are alleged to have devised a multi-part scheme to fraudulently generate revenue from health care benefit programs related to the COVID-19 pandemic by "pool testing" and manipulating thresholds. [*Id.* ¶¶ 4a , 4b.] The scheme is alleged to have commenced in or about the Summer of 2020, continuing through the date of the Indictment. [*Id.* ¶ 6.] The indictment specifically alleges fraudulent billing by the Defendants between March 2021 and September 2021. [*Id.* ¶ 9.] The Defendants are specifically charged with healthcare fraud in which they aided and abetted each other, and knowingly executed and attempted to execute a scheme and artifice to defraud a health care benefit program to obtain money and property under the control and custody of the health care benefit program all in violation of Title 18, United State Code, § 1349. [*Id.*]

**Requested Subpoenas**

Murdock contends the documents requested by the proposed subpoenas seek "evidence directly relevant to these allegations, including evidence showing whether pooling and contamination issues were concealed by Premier, what the contours of the agreement for handling and billing of COVID-19 tests for eTrueNorth/HHS, what Murdock knew about actions other Premier employees were taking, including the handling and billing of the allegedly fraudulent tests, whether he intended to defraud a health care benefit program, and whether he knowingly and willfully joined the alleged agreement." [Doc. 87 at 2.] Defendant contends that, although the government subpoenaed eTrueNorth on January 12, 2022, the production made is incomplete as it did not contain secured messages exchanged between them, or relevant text messages from eTrueNorth employees relating to Premier pooling COVID-19 samples, and contamination related to COVID-19 testing. [*Id*. at 2—3.]

Defendant also seeks access to documents held by his co-defendants Lee and Narayaran. [*Id*. at 3.] Defendant contends that neither co-defendant has produced relevant text messages or other documents. Defendant requests that the proposed subpoenas designate Philadelphia defense counsel as the place of production, however as alternatives, Murdock proposes production to South Carolina defense counsel or the Clerk of Court for the parties' inspection.[1] [*Id*. at 8.]

[1] Under the provisions of Rule 17(c), document production is directed to the Court, and inspection rights extend to the parties and their attorneys. Rule 17 aims to expedite trial by allowing parties to inspect subpoenaed materials prior to trial under court supervision. Thus, production directly to counsel is not contemplated.

Lastly, the Defendant contends the government failed to "subpoena three other key witnesses in this case, including Brian Krueger and Kathleen Ritz, whose disclosures to the government initiated the investigation that led to the indictment of Murdock, and Kevin Kennedy, who managed Premier's relationship with eTrueNorth." [*Id.*]

***A. eTrueNorth Subpoena***

In the eTrueNorth subpoena, the Defendant seeks the following categories of documents:

1. All Documents concerning the negotiation, execution, or modification of eTrueNorth's contracts with Premier, including but not limited to any amendments, addenda, and statements of work.

2. All Secure Messages between eTrueNorth and Premier, including but not limited to messages sent or received on the Sendinc platform, the Barracuda Email Encryption Service, Microsoft Office 365 Message Encryption, or any other encrypted or secure messaging platform.

3. All chats and text messages, including iMessages or their equivalent, sent to or from any eTrueNorth employee regarding:

    a. Premier;
    b. the pooling of COVID-19 samples for testing;
    c. assays used to perform COVID-19 tests;
    d. contamination related to COVID-19 testing;
    e. billing or payments for COVID-19 testing;
    f. Accuracy, validity, reliability, timeliness, or turn-around time of COVID-19 test results;
    g. the investigation or prosecution of Premier, Kevin Murdock, or any current or former employee of Premier.

4. All Documents, including any texts, chats, or secure messages, concerning eTrueNorth's communications with the Government regarding:

    a. Premier;
    b. the pooling of COVID-19 samples for testing;
    c. assays used to perform COVID-19 tests;
    d. contamination related to COVID-19 testing;
    e. billing or payments for COVID-19 testing;
    f. Accuracy, validity, reliability, timeliness, or turn-around time of COVID-19 test results

g. the investigation or prosecution of Premier, Kevin Murdock, or any current or former employee of Premier.

5. All documents concerning communications between any eTrueNorth employee and any individual, including Kathleen Ritz, Kevin Kennedy, and Brian Krueger, regarding:

   a. Premier;
   b. the pooling of COVID-19 samples for testing;
   c. assays used to perform COVID-19 tests;
   d. contamination related to COVID-19 testing;
   e. billing or payments for COVID-19 testing;
   f. the accuracy, validity, reliability, timeliness, or turn-around time of COVID-19 test results
   g. the investigation or prosecution of Premier, Kevin Murdock, or any current or former employee of Premier.

6. All Documents concerning the negotiation, execution, and modification of contracts between eTrueNorth and the U.S. Department of Health and Human Services regarding COVID-19 testing.

7. All Documents concerning COVID-19 test results provided by Premier to eTrueNorth, including but not limited to test result reports, laboratory reports, cycle threshold (Ct) value data, quality control reports, proficiency testing results, standard operating protocols (SOPs), and any documentation concerning the accuracy, validity, or reliability of test results provided by Premier.

8. All Documents concerning invoices, purchase orders, or claims submitted by eTrueNorth to any government payor related to COVID-19 testing performed by Premier.

9. Documents sufficient to show all payments from any government payor to eTrueNorth related to COVID-19 testing performed by Premier, including the amount, date, and method of each payment.

10. All Documents concerning eTrueNorth's internal policies, procedures, or guidelines related to:

    a. the oversight or auditing of subcontractor laboratories, including Premier;
    b. quality assurance or quality control for COVID-19 testing performed by subcontractor laboratories; and
    c. the reporting of COVID-19 test results to government agencies.

11. All Documents and Communications concerning any audit, review, or investigation conducted by eTrueNorth related to Premier's COVID-19 testing, including but not limited to any audit, review, or investigation concerning the

> pooling of COVID-19 samples, cycle threshold manipulation, contamination, or the accuracy or reliability of COVID-19 test results provided by Premier.

Upon review, the Court finds that these requests represent exactly the kind of expansive, imprecise discovery that falls outside the scope of Rule 17(c). And while Request 9 merely seeks "documents" sufficient to show all payments related to testing performed by Premier, the Indictment is limited to 15 specific tests [Doc. 1 ¶ 9] and Defendant has failed to allege why the Government's own records regarding these 15 tests are inadequate.

Indeed, the sheer breadth of the subpoena requests supports the Court's finding that the requests, as drafted, amount to the general fishing expedition *Nixon* forbids. Thus, Defendant's motion will be denied on this basis alone. *See Ging-Hwang Tsoa*, 2013 WL 5837631, at *2 (rejecting requests for subpoenas seeking complete realtor files for nine transactions and another seeking complete mortgage broker files for four transactions holding that "[t]he subpoenas at issue[ ], ... which indiscriminately request 'complete' files, are perhaps a 'paradigmatic example of a fishing expedition' "); *Caro*, 597 F.3d at 620 ("[T]he hope of obtaining favorable evidence does not justify the issuance of [a Rule 17(c)] subpoena," especially when the movant "can only speculate as to what the requested information would have shown"); *Wai Lun Ng,* 2007 WL 3046215, at *3 (rejecting requests for "any and all" documents fitting a certain description); *see also United States v. Kipp*, No. 3:15-CR-244-MOC-DSC, 2016 WL 7209581, at *2 (W.D.N.C. Dec. 9, 2016) (quashing a Rule 17(c) subpoena issued by the defense seeking "all documents and communications" and "all instant messages sent or received," "any emails ... relating to," concluding that "[t]hese subpoenas cast a wide net in what appears to be a quest for pretrial discovery outside the Rule 16 framework").

The party seeking the subpoena must demonstrate a "sufficient likelihood that the requested material is relevant to the offenses charged in the indictment, and a sufficient preliminary showing that the requested material contains evidence admissible with respect to the offense charged." *United States v. Wittig*, 250 F.R.D. 548, 553 (D. Kan. 2008) (internal quotation marks and alterations omitted). Furthermore, "[c]onclusory allegations of relevance and admissibility are insufficient." *Id*. *See also United States v. Forbes*, No. 3:02CR264, 2006 WL 8422825, at *2 (D. Conn. July 25, 2006) ("[D]ocuments are not obtainable pursuant to Rule 17(c)" if a party cannot show that "the documents he seeks would be admissible as evidence at trial."); *United States v. RW Professional Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) ("The fact that they are potentially relevant or may be admissible is not sufficient.") (*citing United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965)).

Lastly, the Court notes that, where the Defendant believes the Government's January 2022 eTrueNorth subpoena return was incomplete, a Rule 16 or *Brady* demand and/or a motion to compel may have provided a proper remedy, not a Rule 17(c) motion. And to the extent the Government possesses exculpatory or impeachment evidence, the Government, of course, has an ongoing obligation to produce this evidence to the defense. Seeking documents through a Rule 17 subpoena on the mere speculation that discovery could produce *Brady* or *Giglio* evidence is not enough. *See United States v. Beckford*, 964 F. Supp. 1010, 1031 (E.D. Va. 1997) ("The Government correctly notes that a Rule 17(c) subpoena duces tecum is improper where it calls for the production of *Brady*, *Jencks*, or *Giglio* material. That is because those materials are subject only to

limited discovery pursuant to Fed. R. Crim. P. 16, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the *Jencks Act* 18 U.S.C. § 3500.”).

Accordingly, Defendant’s motion with respect to the eTrueNorth subpoena is denied.

***B. Subpoenas to Kennedy, Krueger and Ritz***

The subpoenas to Kennedy, Krueger and Ritz, suffer the same infirmities as outlined above with respect to the eTrueNorth subpoenas by seeking “all documents and communications” without specificity. As to Kennedy, Krueger and Ritz, these subpoenas seek, generally

1. All text messages, including iMessages or their equivalent, sent or received by You relating to Premier, eTrueNorth, COVID-19 testing, billing for COVID-19 testing, pooling of COVID-19 samples, contamination related to COVID-19 testing, or any of the Defendants.

2. All Documents concerning Communications between You and any employee, agent, or representative of eTrueNorth, including but not limited to Gregg Tavolacci, Sharon Collins, Coral May, Kyle Alexander, Graham Cockell, Maria Mendoza, and any other eTrueNorth personnel, concerning or related to Premier, COVID-19 testing, pooling of COVID-19 samples, billing or payments for COVID-19 testing, contamination related to COVID-19 testing, test results, or any of the Defendants.

3. All Documents concerning Communications between You and any current or former employee, agent, or representative of Premier, including but not limited to the Defendants, Kathleen Kennedy, Brad Murdock, Phillip Murdock, Michael Conroy, John Burns, Brian Krueger, and any other Premier personnel, concerning or related to eTrueNorth, COVID-19 testing, pooling of COVID-19 samples, billing or payments for COVID-19 testing, contamination related to COVID-19 testing, test results, or any of the Defendants.

4. All Documents concerning Communications between You and any federal or state agency, prosecutor's office, or law enforcement entity, including but not limited to the Government as defined herein, concerning or related to Premier, the Defendants, eTrueNorth, COVID-19 testing, pooling of COVID-19 samples, contamination related to COVID-19 testing, billing or payments for COVID-19 testing, or the investigation or prosecution of CR. NO. 6:26-202.

Requests to Krueger also included a request for

1. All emails and Secure Messages sent or received by You on any personal or professional email account, including, but not limited to brian.j.krueger@gmail.com, relating to Premier, eTrueNorth, COVID-19 testing, billing for COVID-19 testing, pooling of COVID-19 samples, contamination related to COVID-19 testing, or any of the Defendants.

Requests to Ritz also included a request for

1. All emails and Secure Messages sent or received by You, on any personal or professional email account, including but not limited to the email addresses kathleen@ritzmarketing.com and kritz@divmedinc.com relating to Premier, eTrueNorth, COVID-19 testing, billing for COVID-19 testing, pooling of COVID-19 samples, contamination related to COVID-19 testing, or any of the Defendants.

[Docs. 87-3; 87-4; 87-5.]

The above requests fail to meet the Rule 17(c) requirements of relevancy and specificity. *Ging-Hwang Tsoa*, 2013 WL 5837631, at *2 ("the party requesting information must identify with specificity what is sought.") With respect to Defendant's argument that the Government did not subpoena Krueger, Ritz and Kennedy in support of its need for the Rule 17(c) subpoena, the Government had no duty to do so. Additionally, with respect to requests about Government communications and the Krueger/Ritz materials, the need for impeachment materials generally does not justify pretrial production. *Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."). The rationale underlying this rule is that potential impeachment material does not ripen into such until the witness testifies. *See United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980). Consequently, courts consistently hold "that Rule 17(c) subpoenas should not be used to obtain, before trial, materials to be used for impeachment purposes." *United States v. Jenkins*, 895 F. Supp. 1389, 1393-94 (D. Haw. 1995) (*citing United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981)); *accord United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Courts

have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment."). Thus, because the subpoenas failed to clear Rule 17(c) requirements, the Defendant's motion for subpoenas to Kennedy, Krueger and Ritz is denied.

### *C. Co-Defendant Lee and Narayanan Subpoenas*

Again, the subpoenas to Murdock's co-defendants suffer the same infirmities outlined above with respect to the eTrueNorth subpoenas by seeking "all documents and communications" without specificity. These subpoenas seek, generally,

1. All text messages, including iMessages or their equivalent, sent or received by You relating to Premier, eTrueNorth, COVID-19 testing, billing for COVID-19 testing, pooling of COVID-19 samples, contamination related to COVID-19 testing.

2. All Documents concerning Communications between You and any employee, agent, or representative of eTrueNorth, including but not limited to Gregg Tavolacci, Sharon Collins, Coral May, Kyle Alexander, Graham Cockell, Maria Mendoza, and any other eTrueNorth personnel, concerning or related to Premier, COVID-19 testing, pooling of COVID-19 samples, billing or payments for COVID-19 testing, contamination related to COVID-19 testing, test results, or Kevin Murdock.

3. All Documents concerning Communications between You and any current or former employee, agent, or representative of Premier, including but not limited to Kevin Kennedy, Kathleen Kennedy, Brad Murdock, Phillip Murdock, John Burns, Brian Krueger, and any other Premier personnel, concerning or related to eTrueNorth, COVID-19 testing, pooling of COVID-19 samples, billing or payments for COVID-19 testing, contamination related to COVID-19 testing, test results, or Kevin Murdock.

4. All Documents concerning Communications between You and any federal or state agency, prosecutor's office, or law enforcement entity, including but not limited to the Government as defined herein, concerning or related to Premier, eTrueNorth, COVID-19 testing, pooling of COVID-19 samples, contamination related to COVID-19 testing, billing or payments for COVID-19 testing, or the investigation or prosecution of CR. NO. 6:26-202.

[Docs. 87-2; 87-3.]

Again, the above requests fail to meet the Rule 17(c) requirements of relevancy and specificity. *Ging-Hwang Tsoa*, 2013 WL 5837631, at *2 ("the party requesting information must identify with specificity what is sought."). Because the requests fail to pass Rule 17(c) hurdles, the Court declines to address the fact that producing such records may involve communicative aspects and compelling that communication may violate the Fifth Amendment privilege against compelled testimony precluded by the act-of-production aspect of the Fifth Amendment. *Fisher v. United States,* 425 U.S. 391, 410 (1976). Thus, because the subpoenas fail to clear Rule 17(c) hurdles, the Defendant's motion with respect to the subpoena to his co-defendants is denied.

**Conclusion**

For the reasons stated herein, Defendant's motion for leave to issue Rule 17(c) subpoenas duces tecum is DENIED without prejudice to Defendant's right to file a more narrowly tailored motion consistent with this Order.

**IT IS SO ORDERED.**

s/ Jacquelyn D. Austin
United States District Judge

October 20, 2026
Greenville, South Carolina